UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN MLNARIK, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>SMITH, GARDNER, SLUSKY, LAZER, POHREN & ROGERS, LLP, et al.,<br><br>     Defendants. | Case No. 14-cv-01849-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF No. 10] |

Plaintiffs John and Kristen Mlnarik ("Plaintiffs") filed this lawsuit alleging that defendants Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP ("SGSLPR") and DC Homeowners' Association ("DCHA," collectively with SGSLPR, "Defendants") violated provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32 ("Rosenthal Act").  Before the Court is Defendants' Motion to Dismiss Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed June 13, 2014.  (Def.'s Mot., ECF 10)  On July 21, 2014, this Court vacated the July 24, 2014 hearing on Defendants' motion, finding the matter appropriate for submission without oral argument.  Civ. L.R. 7-1(b).  Having carefully reviewed the parties' respective written submissions, for the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss with leave to amend.

**I.    BACKGROUND**

The following facts are taken from the Second Amended Complaint ("SAC") and are assumed to be true.

Plaintiffs are residents of Santa Clara County, California and owners of a property in Omaha, Nebraska ("Property").  (SAC ¶ 1)  In a letter postmarked July 30, 2013, Richard Rozgay,

the President of defendant DCHA, notified Plaintiffs about DCHA's imminent assessment of fines on the Property.[1]  (*Id.* ¶ 12)  The letter stated that DCHA "will accrue the initial $200 fine plus $500 for each of the next two weeks thereafter until we reach a $5,000 cap."  (*Id.*)  Plaintiffs believe that these "fines" were "charged for 'violating the Covenants.'"  (*Id.* ¶ 9)  Plaintiffs, however, contest DCHA's authority to impose such fines.  (*Id.* ¶ 14)

On or about March 13, 2014, defendant SGSLPR sent Plaintiffs a letter indicating that "a lien had been 'filed upon the [P]roperty for fines, lien costs, and interest in the amount of $5,457.25'" and that SGSLPR would foreclose the lien unless full payment was made by March 26, 2014.  (*Id.* ¶ 9)  The letter "alleged no other sources of the monetary sum allegedly owed by Defendants" but stated that SGSLPR "'could perhaps forebear foreclosing the lien, or even charging the fines'" if Plaintiffs "'could promptly cease . . . violating the Covenants.'"  (*Id.* ¶¶ 9-10)  From this, Plaintiffs infer that the SGSLPR letter was sent in connection with the fines described in the July 30, 2013 letter sent by DCHA, and that the referenced lien "was allegedly based in part upon 'fines' charged for 'violating the Covenants.'"  (*Id.* ¶ 9)  Plaintiffs allege that no lien was recorded on the Property as of March 20, 2014.  (*Id.* ¶ 13)

Based on the foregoing, Plaintiffs allege that both Defendants violated the Rosenthal Act, and that SGSLPR also violated the FDCPA, by falsely claiming "1) that fines were assessable under the relevant covenants; 2) that such fines and other costs had been described as a sum certain in a lien on the property; 3) that such a lien had been filed; and 4) that foreclosure procedures could soon be undertaken based upon the lien."  (*Id.* ¶¶ 19, 22)

## II. LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003).  Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

---

[1] The Court infers that DCHA is the homeowners' association for the Nebraska Property, though that is not expressly alleged in the SAC.

To survive a motion to dismiss, a complaint must plead sufficient "factual matter, accepted as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The emphasis is on *factual* pleadings, as a pleading that offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not do. *Id.* (citing and quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In assessing the sufficiency of the pleadings, the Court "accept[s] *factual* allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (emphasis added). However, the court is not required to accept as true allegations that are "unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If a motion to dismiss is granted, a court should normally grant leave to amend, "even if no request to amend the pleading was made," unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotations omitted).

### III.   DISCUSSION

Defendants seek to dismiss all of Plaintiff's claims, arguing that they are not legally cognizable. Specifically, Defendants argue that Plaintiffs have not demonstrated that Defendants' collection activities were made in connection with a "debt" or "consumer debt" as those terms are respectively defined under the FDCPA and the Rosenthal Act. As such, Plaintiffs cannot state a claim under either statute. (*See generally* Def.'s Mot.) The Court addresses each statute in turn.

#### A.   FDCPA Claim Against SGSLPR

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5). SGSLPR contends that Plaintiffs have not sufficiently alleged that SGSLPR's March 14, 2014 letter was sent in connection with a "debt" within the definition of the FDCPA. (Def.'s Mot. 3-14) Specifically, SGSLPR notes that the sum of money Plaintiffs allegedly owed

3

was entirely comprised of "fines" for violating homeowners' association ("HOA") covenants, and that such fines are not "debts" as that term is defined by the FDCPA. (*Id.* at 3-11)  SGSLPR also argues that Plaintiffs have alleged no facts to indicate that the monetary obligation was incurred "primarily for personal family or household purposes," which is also required for such obligation to qualify as a "debt" under the FDCPA. (*Id.* at 11-14)

Plaintiffs elide Defendants' arguments concerning the crucial nature of the monetary obligation by dismissing them as "irrelevant."[2]  (Pl.'s Opp. 2-3, ECF 11)  The primary thrust of Plaintiffs' argument seems to be that regardless of the nature of the obligation to pay money, if Plaintiffs do not believe the obligation exists, then any collection activity on the obligation necessarily falls within the ambit of the FDCPA as a "false representation of the character" of a debt. (*See id.* 2-3; *see also* 15 U.S.C. § 1692e (describing the means that a debt collector is prohibited from using in connection with the collection of a debt))  Plaintiffs also contend that SGSLPR violated the FDCPA by "falsely characterizing the non-existent debts as 'fines.'" (Pl.'s Opp. 3)  Plaintiffs' arguments miss a step.

It is axiomatic that not all obligations to pay money are covered by the FDCPA.  *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004) (citing *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001)).  The statute "is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'"  *Id.* at 1227 (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997), as the articulation of the "consensus judicial interpretation").  Whether the dispute involves a "debt" within the meaning of the statute is thus "a *threshold* issue in a suit brought under the [FDCPA]," *id.* (emphasis added), and is wholly *relevant* to the Court's consideration of whether the SAC sufficiently states an FDCPA claim.  Accordingly, the success of Plaintiffs' FDCPA claim turns on whether they have alleged sufficient facts from which it can be reasonably inferred that SGSLPR's offending March 14, 2014 letter was sent in connection

---

[2] The Court takes issue with the tone of Plaintiffs' opposition brief.  Plaintiffs' characterizations of Defendants' arguments as "dramatically—perhaps contemptuously—wrong," (Pl.'s Opp. 4), and "ludicrous," (*id.* at 8), are distracting and border on incivility.  Counsel are reminded that name calling is unwelcome and unacceptable.

4

with a "debt" as that term is defined by the FDCPA. The allegations in the SAC fall far short of this mark.

Neither party has submitted the offending letters in question. As such, the Court looks to the scant allegations in the Complaint to determine whether Plaintiffs successfully pled conduct that falls within the ambit of the FDCPA. The March 13, 2014 letter from SGSPLR indicated that the alleged lien was "for fines, lien costs, and interest." Plaintiffs believe the lien was "based in part upon 'fines' charged for 'violating the Covenants.'" (SAC ¶ 9) In fact, the letter offered to "'forebear foreclosing the lien'" if Plaintiffs could "'promptly cease . . . violating the Covenants.'" (*Id.*) Plaintiffs allege that DCHA did not have the authority to impose fines because "there is no contractual agreement as to 'fines' in any of the relevant declarations drafted to define the covenants on the Property." (*Id.* ¶ 14) They do not provide any other detail concerning the nature and origin of the alleged obligation. Plaintiffs also do not allege when they purchased the Nebraska Property or when they took up residence in California, though the Court infers from the allegations that Plaintiffs have resided in California since at least July 30, 2013. (*See id.* ¶ 1)

Taking Plaintiffs' allegations as true, the Court can at most infer that SGSPLR attempted to collect on a monetary obligation that Plaintiffs did not believe they owed. That is not sufficient to invoke the protections of the FDCPA. Plaintiffs must plead *facts* to indicate how that obligation to pay money arose in the first place, whether one articulates the standard as "a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes," U.S.C. § 1692a(5), or as a "consensual transaction[], where parties negotiate or contract for consumer-related goods or services." *Turner*, 362 F.3d at 1227. In some circumstances, this could be as simple as alleging a dispute involving a common type of consumer debt such as a mortgage or credit card debt. In others, such as here, alleging a covered "debt" may be more difficult because a plaintiff must allege more facts than would normally be required for a common type of consumer obligation. That is the burden that Plaintiffs bear, and they have not done so here.

Contrary to Plaintiffs' argument, requiring them to allege—as a threshold matter—that the dispute involves a "debt" within the definition of the FDCPA does not "insulate" Defendants

against violating the FDCPA "by the violation itself." (Pl.'s Opp. 3)  There is no presumption that an obligation to pay money is a "debt" for FDCPA purposes—that is Plaintiffs' affirmative pleading burden.  Plaintiffs' litany of cases holding that HOA assessments fall within the FDCPA's definition of "debt," (*see* Pl.'s Opp. 7-8), is uncontested by Defendants but also unavailing because Plaintiffs do not even allege that the disputed monetary obligation comprises HOA assessments.  There is simply an absence of facts concerning how and why Plaintiffs allegedly owe money other than that the obligation is based on "covenants on the Property." (SAC ¶ 14)  The Court declines to presume that the FDCPA extends to this vague description of the underlying obligation to pay money.

Moreover, Plaintiffs characterize the purported monetary obligation sought by Defendants as "fines," (SAC ¶¶ 8-10, 12-15, 19), without any attempt to allege facts showing an alternate possible source of Defendants' demand.  Plaintiffs rely only on their own conclusion that the alleged obligation is a "non-existent debt"; a conclusion that is unsupported by the facts alleged in the SAC.  The Court can thus only plausibly infer that Defendants are in fact demanding payment, rightly or wrongly, for a fine and not as a result of a business dealing or obligation to pay for goods or services.  Though there is no binding authority holding that fines are not "debts" within the purview of the FDCPA, the Court finds the reasoning of courts outside this circuit persuasive—and consistent with Ninth Circuit rulings—in finding that a fine is more akin to a tort award, for which no claim arises under the FDCPA. *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370-72 (11th Cir. 1998); *Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1265 (M.D. Fla. 2008).

Defendants' Motion to Dismiss is accordingly GRANTED with respect to the FDCPA claim against SGSLPR.  Plaintiffs shall have leave to amend in order to allege facts showing that the alleged obligation to pay qualifies as a "debt" within the definition of the FDCPA.[3]

---

[3] The Court notes that Plaintiffs' glib suggestion that "if the court finds necessary," Plaintiffs can add a conclusory clause to the first sentence of the complaint stating "which plaintiffs purchased for personal, family, or household purposes," (Pl.'s Opp. 5), is unlikely to be sufficient to remedy the factual shortcomings of the SAC.  Plaintiffs must demonstrate by pleading factual allegations that at the time the alleged obligation was incurred, it was done so for personal, family, or household purposes. *See, e.g., Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698

### B. Rosenthal Act Claim Against Defendants

California's Rosenthal Fair Debt Collection Practices Act applies to conduct in connection with the collection of "consumer debts." Consumer debts are defined as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction," which in turn is defined as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(a), (e), (f).

Other than the requirement that the property, services or money be acquired "on credit," the Rosenthal Act's definition of "consumer debt" is very similar to the federal definition under the FDCPA. In fact, the parties appear to agree that "cases interpreting the word 'transaction' under the FDCPA are the best authority for the term's meaning under the Rosenthal Act.'" (Pl.'s Opp. 6; Def.'s Reply 7, ECF 12) Plaintiffs argue, however, that the Rosenthal Act was intended to have broader coverage than the FDCPA. Accordingly, the Rosenthal Act should be read broadly to encompass transactions not covered by its federal counterpart. (Pl.'s Opp. 8) Plaintiffs would effectively have the Court ignore the plain language of the Rosenthal Act based on their misreading of *Herrera v. LCS Financial Services Corp.*, No. C09-02843 TEH, 2009 WL 5062192 (N.D. Cal. Dec. 22, 2009). The *Herrera* court noted that the Rosenthal Act's definition of "debt collector" is broader than that of the FDCPA—the Rosenthal Act does not exclude from its definition creditors collecting on their own debts, which is why Plaintiffs have sued the putative obligee DCHA under the Rosenthal Act but not the FDCPA. *Id.* at *2 n.1. This broader range of applicability to an additional class of defendants does not equate to a broader range of applicability to other types of monetary obligations.

In fact, at least one of the cases that Plaintiffs cite appears to have concluded that the Rosenthal Act applies to a *narrower* category of monetary obligations than does the FDCPA. In

---

F.3d 290, 293 (6th Cir. 2012). To the extent that the alleged monetary obligation was incurred after Plaintiffs purchased the Nebraska Property, Plaintiffs' proposed conclusory amendment would be irrelevant and insufficient.

*Durham v. Continental Central Credit*, No. 07-cv-1763-BTM(WMC), 2009 WL 3416114 (S.D. Cal. Oct. 20, 2009), a case involving HOA assessments, the court denied the defendants summary judgment as to certain of the plaintiff's FDCPA claims but granted summary judgment in defendants' favor as to the Rosenthal Act claim. The court specifically reasoned that "the regular HOA assessments for ongoing maintenance and general services do not constitute a 'consumer credit transaction'" and that there was "no evidence that Plaintiff or the other homeowners acquired services on credit from the Association." *Id.* at *7. As this Court has already noted, there are no allegations concerning how the alleged obligation to pay money arose, let alone allegations to suggest that obligation was incurred for services acquired "on credit" from the DCHA. Suffice it to say, as with their FDCPA claim, Plaintiffs must allege more facts to demonstrate that the dispute involves a "consumer debt" as defined by the Rosenthal Act.

Defendants' Motion to Dismiss is therefore GRANTED with respect to Plaintiffs' Rosenthal Act claims against all Defendants. Plaintiffs shall have leave to amend in order to allege facts showing that the monetary obligations at issue are "consumer debts" within the meaning of the Rosenthal Act. Because Plaintiffs' allegations concerning the nature of the monetary dispute at issue in this case are so vague, the Court declines to decide at this time whether defendant DCHA can be held liable under the Rosenthal Act for either of the July 30, 2013 or March 14, 2014 letters.

### IV. ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED with leave to amend. Within **twenty-one (21) days** of the date of this order, Plaintiffs shall file an amended complaint that complies with this order.

Dated: July 28, 2014

BETH LABSON FREEMAN
United States District Judge