THE MLNARIK LAW GROUP, INC.
JIM ERICKSON (SBN 235630)
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone: (408) 919-0088
Facsimile: (408) 919-0188

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN MLNARIK, KRISTEN MLNARIK, | Case No. 14-01849 |
| Plaintiffs, | **OPPOSITION TO MOTION TO DISMISS FOURTH AMENDED COMPLAINT** |
| v. | |
| SMITH, GARDNER, SLUSKY, LAZER, POHREN & ROGERS, LLP, a limited liability partnership; D.C. HOMEOWNERS' ASSOCIATION aka D.C. HOMEOWNERS ASSOCIATION aka DC HOMEOWNERS' ASSOCIATION aka DC HOMEOWNERS ASSOCIATION, a corporation; and | Date: November 20, 2014<br>Time: 9:00 A.M.<br>Room: 3 |
| Does 1-10,<br>Defendants. | |

### I.  Defendants' Motion Refers to "Fines" As Though There Actually Were "Fines"

The word "fine" or "fines" is used more than one hundred times in defendants' motion. Every single use should be discounted.  As stated in the complaint:  There were no fines in this case.  And there was no "alternate source" of the "obligation" because there was no "obligation." As to "when" the "obligation" was "incurred" -- it wasn't.  As to "why" -- just because.  This alleged debt did not exist.  Its alleged existence is rooted in the transaction of buying a house to live in. Without that transaction, no demand letters would have been sent, no "fines" would have been conjured out of thin air, no groundless threat to (illegally) foreclose would have been made.

To quote the complaint at paragraphs 20-21 (in pertinent part):

> [T]here is no contractual agreement as to "fines" in any of the relevant declarations drafted to define the covenants on the Property, and therefore ... DCHA has no authority to impose such "fines."... Richard Rozgay must therefore have arbitrarily conjured up a dollar figure, arbitrarily created a time-period via which this fabricated dollar figure would accumulate, and arbitrarily named the sum involved a "fine," when any word at all could have been applied to describe the arbitrary, invented, contractually unauthorized sum involved.  The sum was not a "fine" because no fine could possibly exist ....

The FDCPA applies to a "charge, or expense incidental to the principal obligation" if not "expressly authorized by the agreement creating the debt." 15 U.S. Code § 1692f(1).  The Rosenthal Act applies to "other charges if, in fact, such fees or charges may not legally be added."  Cal. Civ. Code § 1788.13(e).  The so-called "fine" here falls under both Acts.

Also:  pace *Durso*, infra, an HOA "fine" is not "akin to a tort."  The basic tort/contract split is well-known: torts are not contract breaches and contract breaches are not torts.  The "fine" here was said to be due to a breach of the CCRs.  This is not "akin to tort."

Black's Law Dictionary defines "fine" as: "A pecuniary criminal punishment or civil penalty payable to the public treasury."  BLACK'S LAW DICTIONARY 553 (abr. 9th ed. 2010).  Other than the badly reasoned outlier *Durso* (see below), such non-FDCPA "akin to tort" fines have almost always involved parking tickets and the like -- that is, fines charged by a public body.  Such fines do not involve a "transaction."  But HOA fines are rooted in a transaction: a contract between finer and finee.  Without the contract: no fine.  Without the transaction:  no contract.  The transaction is the

1

OPPOSITION TO MOTION TO DISMISS  4th Am. Comp.            MLNARIK et al. v. SGSLPR LLP, et al.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088  Facsimile (408) 919-0188

without-which-not of the fine.

And again: the "fine" here did not exist. Lacking a "fines" clause in the CCRs, defendants fail both "if-then" tests: not "expressly authorized by the agreement creating the debt"; and not "legally added." 15 U.S. Code § 1692f(1); Cal. Civ. Code § 1788.13(e).

Suppose the CCRs said this: "You can't wear bow ties." Suppose such a contract term were legal in CCRs. Suppose no right to charge "fines" was stated in the CCRs. (As here.) Suppose the HOA and its lawyers sent letters that said: "You wear bow ties. So we are fining you a million dollars. You'd better stop wearing bow ties or else pay a million dollars, because we will sell your house otherwise." Suppose the law forbids "unpaid HOA fines" as a basis to foreclose. (As here.)

The false statements would be: 1) We can fine you. 2) We can fine you any amount we choose. 3) We can foreclose due to unpaid fines. (All three as here.)

These statements would be false even if the CCRs forbade wearing bow ties and such a contract term were legal. (And under almost all the case law that is on point, the non-existent "obligation" would have been "incurred" upon the transaction of buying the house -- without which no CCRs . . . and therefore no demand letters about non-existent "fines.")

But defendants say that a 2008 trial court in Florida has ruled out FDCPA claims based on these false statements. Why? Because, here, the word "fines" was used in defendants' demand letters. *Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256 (M.D. Fla. 2008) is the only case cited by defendants that did not involve parking tickets or the like, or damages from a tort judgment. (*Durso* is cited in the previous motion, and incorporated by reference to the Court Order in the current motion -- a motion which <u>explicitly</u> cites only three debt-related cases.)

*Durso* stands for the notion that HOA "fines" are "more akin to the tort award described by the Eleventh Circuit in *Hawthorne*." *Hawthorne*, it seems, was about a driver who had an accident and so owed tort damages ("driver" is at best implied). Here is what *Hawthorne* says:

> The ordinary meaning of "transaction" necessarily implies some type of business dealing between parties.... In other words, when we speak of "transactions," we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence.... [A]t a minimum, a "transaction" under the FDCPA must involve some kind of business dealing or other consensual obligation.... [N]o contract, business, or

2

OPPOSITION TO MOTION TO DISMISS  4th Am. Comp.           MLNARIK et al. v. SGSLPR LLP, et al.

> consensual arrangement between [the instant parties] exists.
> *Hawthorne v. Mac Adjustment*, 140 F.3d 1367, 1371 (11th Cir. Ala. 1998)

The Florida trial court in *Durso* also cited *Hamilton v. United Healthcare of La.*, 310 F.3d 385 (5th Cir. La. 2002), but did not quote any of this (the two block-quotes below are at 390-92):

> [A]s long as the consumer transaction creates an obligation to pay, a "debt" is created .... [In *Brown v. Budget Rent-A-Car*, 119 F.3d 922 (11th Cir. 1997),] Brown's obligations arose at least in part out of a [contract] .... Because no such "transaction" -- i.e., contract, business, or consensual arrangement -- occurred in *Hawthorne*, the [*Hawthorne*] court held that *Brown* did not require the court to conclude that the tort obligation at issue was covered by the FDCPA.

The *Hamilton* court then analyzed the FDCPA's language (also not noted in *Durso*):

> "Arising out of" are words of much broader significance than "caused by." They are ordinarily understood to mean "originating from[,]" "having its origin in," "growing out of" or "flowing from," or in short, "incident to, or having connection with"; see also BLACK'S LAW DICTIONARY 102 (7th ed. 1999) (defining "arise" as originating or stemming from). Moreover, the ordinary meaning of the term "transaction" is a broad reference to many different types of business dealings between parties, and does not connote any specific form of payment. ([Cite; see also] WEBSTER'S NEW WORLD DICTIONARY 1509 (2d ed. 1986) (defining "transaction" simply as "a business deal or agreement")).... As opposed to *Hawthorne*, where Hawthorne's obligations arose from tort law, Hamilton's obligations arose from a business transaction where Hamilton contracted for personal and family services .... Moreover, the plain meaning of "arising out of" as "stemming from" leads us to conclude that the obligation to pay arose from the contract/transaction ....

As a recent court summed up: "The single distinguishing feature [between *Hawthorne* and *Hamilton*] is the contractual relationship between Hamilton and his insurer. As acknowledged by the Fifth Circuit in *Hamilton*, it was Hamilton's contract with his own insurer that created the debt obligation whereas in *Hawthorne*, the debt obligation arose from her own tortious acts." *Taylor v. Javitch, Block & Rathbone*, 2012 U.S. Dist. LEXIS 86727 at *11 (N.D. Ohio June 22, 2012).

An alleged breach of a contract (the CCRs) is not "akin to tort."  Nor to parking tickets.

Granted, one (and only one) appellate court <u>has</u> cited *Durso* -- but only as part of a long block-list of cases applying the "akin to tort" rule: *Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011).  Here are the "fines" involved in all the other cases listed by *Gulley*: fines for: traffic violations; traffic violations; parking violation; failure to register vehicle; traffic violation; traffic violation; traffic violation; parking tickets; overdue library book.  Compare: "fines assessed

OPPOSITION TO MOTION TO DISMISS  4th Am. Comp.          MLNARIK et al. v. SGSLPR LLP, et al.

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088  Facsimile (408) 919-0188

against homeowner by homeowners association." *Id*. One of these things is not like the others.

By contrast, here is the reasoned ruling of the 4th Circuit where a replevin (tort) action was the basis for an FDCPA claim:

> [T]he replevin action seeks monetary damages in addition to possession of the vehicle. This request for damages, in and of itself, may constitute an allegation of an "obligation to pay money" within the FDCPA's definition of "debt." The state law characterization of damages in a replevin action as tort damages does not automatically bring them outside of the FDCPA's definition of "debt," where, as here, <u>the record does not explain what those damages represent</u>....[1] The historic state law characterization of replevin as a tort action cannot defeat the FDCPA protection .... [A] court should look beyond the label of the debt collection practice to determine whether a "debt" is being collected.....
>
> [¶] We note that the cases on which [Defendant] relies to argue that tort judgments are not "debt" under the FDCPA involve conventional tort claims in which the liability arises from tortious activity, not from a consensual transaction. [Cites cases about tortious conversion, business interference torts, car accident.] By contrast, here, [the parties] entered into a consensual loan agreement .... Thus, [defendant]'s attempts to enforce that loan agreement through a replevin action fall within the coverage of the FDCPA.
>
> *Rawlinson v. Law Office of William M. Rudow, LLC*, 460 Fed. Appx. 254, 256-257 (4th Cir. Md. 2012) (emphasis added).

The above case was cited with approval in a recent California state appellate case: "The breadth of the phrase 'any obligation or alleged obligation' is not limited to a particular set of obligations. [] Thus, a replevin action, even though it is a tort claim, may be a debt under the FDCPA. [] '[A] court should look beyond the label of the debt collection practice to determine whether a 'debt' is being collected.'" *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal. App. 4th 972, 1001 (Cal. App. 1st Dist. 2013) (quoting *Rawlinson*, supra). The California court also said:

> [W]e disagree with the argument that tort claims are never debts under the FDCPA.... [¶] In the cases cited by [defendant], the obligations to pay were created by something other than a consumer transaction and were not consensual.... Thus, we agree that courts have consistently excluded tort obligations or criminal activity from the FDCPA's definition of "debt" when the tort obligations do not arise out of a consensual transaction.... [¶] [A] debt or obligation under the FDCPA must be based on a consumer consensual or contractual arrangement, not a damage obligation. [] Unlike the [other cases], the present case is not a situation in which [the parties] never had a contractual arrangement of any kind .... Rather, [the] alleged debt ... arose out of [the] transaction ... to purchase the Richmond property. The alleged fraud claims

---

[1] As alleged, the "fine" amount in the instant case was a random number; it had nothing to do with any "damages" but rather was simply plucked from thin air by Mr. Rozgay. This is not akin to tort.

4

OPPOSITION TO MOTION TO DISMISS 4th Am. Comp.          MLNARIK et al. v. SGSLPR LLP, et al.

> clearly arose out of a residential mortgage transaction and Heritage cannot avoid the application of the FDCPA simply because it alleged in its pleading that [the] obligation ... was based on the misrepresentations [made on the] loan application rather than on a breach of [the] obligations under the contract....
>
> [¶] In *Turner v. Cook* [], the liability arose from tortious activity, not from a consensual transaction. By contrast, here, Monroy and WMC entered into a consensual loan agreement for the purchase of a residential home....
>
> [¶] Here, WMC and Monroy consented to the loan application. The fraud action, even though it is a tort claim, arose from the consensual loan transaction, and thus it is a debt under the FDCPA.
>
> *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal. App. 4th at 999-1001.

In the instant case, any "fine" would have been imposed as a contract term. Any "fine" would arise from the transaction of buying the house and thus accepting the terms of the CCRs.

## II. The Acquisition Was For Personal, Family, Or Household Purposes

FDCPA cases make it clear that a home purchase may be for personal use even if the home is later rented or lived in by others. The purpose at the time of acquisition controls. See, e.g., *Miller v. McCalla,* 214 F.3d 872 (7th Cir. 2000): The debt for a house purchased <u>and then rented when the buyer moved away</u> was consumer debt originally; the subsequent use would not alter the applicability of the FDCPA. (Judge Posner explains the policy: "personal borrowers ... are likely to be unsophisticated ... and thus prey to unscrupulous collection methods. Businessmen don't need the warnings.")[2] The court also cites a 9th Circuit case with approval: "it was assumed in *Bloom v. I.C. System, Inc.*, 972 F.2d 1067 [], that the relevant time is when the loan is made, not when collection is attempted." *Garner v. Kansas,* 1999 U.S. Dist. LEXIS 6430 (E.D. La. 1999): The relevant time for determining the intended use was at the time of purchase. Thus, in this HOA case, consumer's purchase of a condominium was a consumer use, <u>notwithstanding his subsequent rental of it</u>. *Sunga v. Broome,* 2010 U.S. Dist. LEXIS 81970 (E.D. Va. 2010) (another HOA case, involving a condominium): The purpose at the time the debt was incurred (the home purchase) controls. *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 698 F.3d 290, 294 (6th Cir. Mich. 2012): The definition of "debt" focuses on the obligation to pay, and the obligation to pay is

---

[2] Under the FDCPA, claims are assessed from the perspective of the "least sophisticated debtor." *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir.1989). If the least sophisticated debtor would "likely be misled" by a communication from a debt collector, the debt collector has violated the Act. *Id*. The least sophisticated debtor is a "lower" standard "than simply examining whether particular language would deceive or mislead a reasonable debtor." *Id*. at 1227.

derived from the purchase transaction itself.  The HOA collections at issue therefore qualified as "obligations ... arising out of a transaction."   The court summed up:  "While debt collector conduct is certainly relevant when determining whether a violation of the FDCPA has occurred, it is not relevant when determining whether the debt in question is debt that is regulated by the FDCPA.  The most probative time in determining the purposes that the individual has for purchasing a property is at the time of the transaction, not when an agency's collection efforts begin."

In fact, at least one court (discussing TILA not FDCPA)[3] has ruled that a home bought <u>in order</u> to rent to strangers is for personal use if the rent money will be used for personal purposes!:[4]

> [Defendant] argues that the loan transaction was primarily commercial in nature because Ms. Koga stated and evidenced an intention to rent the Property.... Even assuming, without finding, that Ms. Koga intended to rent the Property, this fact would not alter the undisputed purpose that Ms. Koga had in mind <u>for the funds</u> -- to assist her daughter and grandchild, buy a smaller owner-occupied residential property, and pay off the medical bills of her deceased husband.... [¶] [T]he Court determines, as a matter of law, that there is no genuine issue of material fact that the loan by ESB to Ms. Koga was a consumer loan for TILA purposes....
> *Koga v. Eastern Sav. Bank, FSB*, 2013 U.S. Dist. LEXIS 117032, 9-12 (D. Haw. Aug. 19, 2013) (emphasis added) (see footnote 3 below).

The words "personal, family, or household purposes" are meant to stand opposed to "business" purposes.  That's the either/or here: personal? or business?  That opposed pair is what the law is getting at -- one or the other.  If not business, then personal.  End of analysis.

Paragraphs 8, 9, 10, and 12 of the complaint are enough to plead that the purchase was not a "business" transaction but a personal one (and ¶ 11 does not change the type of transaction):

> Plaintiffs are the owners of the property [in Omaha, Douglas County] ....
> The Property is a residential dwelling -- i.e., a "home."...
> Plaintiffs bought the Property in order to live there; that is, the purchase transaction was primarily for personal, family, or household purposes.  Plaintiffs are married.  Plaintiff John Mlnarik was born and raised in Nebraska

---

[3] Courts in FDCPA cases "have looked for guidance to cases interpreting analogous provisions ... such as the Truth in Lending Act ('TILA').  [] When classifying a loan, courts typically 'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature.'" *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. Or. 1992) (citations omitted).

[4] If necessary, plaintiffs can add this phrase to the complaint:  "the proceeds from the other occupants have been used by plaintiffs for personal, family, or household purposes."

The Mlnarik Law Group, Inc.
2930 Bowers Avenue
Santa Clara, CA 95051
Telephone (408) 919-0088  Facsimile (408) 919-0188

and went to high school in Douglas County, where both Plaintiffs lived at the time the Property was purchased. John Mlnarik's parents and other family live nearby, and did so at the time of the purchase.

[¶ 11.] Plaintiffs subsequently pursued opportunities outside of Omaha and thus found other occupants for the Property.

Plaintiffs may eventually choose to live full-time in the property, or to retire there, or to have their children or relatives live there.

Case after case holds that a contract with an HOA is rooted in the "transaction" of buying the house. The non-existent "fines" in this case -- had they existed -- would be rooted in the CCRs. The (fake) "obligation" was "incurred" as a contract term. It does not matter whether the house was being used for personal purposes when the non-existent debt was charged, but only that the transaction creating the contractual obligation to any such debt was a transaction for personal purposes.

See, for example, *Haddad*: "[B]y paying for and accepting title to their home, the owners became bound by the [CCRs] of their homeowners association, which required the payment of regular <u>and special</u> assessments imposed by the association.... Because the statute's definition of a 'debt' focuses on the transaction creating the obligation to pay, the obligation to pay is derived from the purchase transaction itself." *Haddad*, supra, 698 F.3d 290, 293-94 (emphasis added).

## III. The "Credit" Element of the Rosenthal Act Should Be Interpreted Via FDCPA Cases[5]

Any economic interaction between the HOA and the plaintiffs -- e.g., regular dues from plaintiffs intended to reimburse the HOA for <u>advancing the costs of services</u> (maintenance, landscaping, etc.) -- is rooted in their contractual agreement. In other words, a homeowner acquires services from an HOA <u>on credit</u>, and is expected to reimburse the HOA for those services.[6]

Defendant HOA contends that it cannot be liable for a Rosenthal Act violation because no "consumer credit transaction" was involved in the claims for a non-existent debt. Unfortunately, there aren't many California state court cases interpreting the phrase "consumer credit transaction" under the Act -- and, it seems, none on point here.[7]

---

[5] Defendants' motion makes almost no reference to the Rosenthal Act. This section is included because the court brought up the issue in its previous ruling.

[6] A "consumer credit transaction" must be a "transaction when the consumer acquires something without paying for it." *Gouskos v. Aptos Vill. Garage*, 94 Cal. App. 4th 754, 759 (2001).

[7] One recent Rosenthal case, not quite on point, may be instructive: In *Koller v. West Bay Acquisitions*, LLC, 2012 U.S. Dist. LEXIS 96162,*19-20 (N.D. Cal. 2012), the defendant alleged that the plaintiff owed fines on overdue video rentals, which was untrue. The court noted that a Rosenthal

The Rosenthal Act applies when (1) "money" is "due or owing"; (2) "by reason of a ... transaction"; (3) wherein "services ... [are] acquired on credit"; (4) "primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e)-(f).  As noted, the "transaction" here was the purchase of the house, resulting in the contract (the CCRs) with the HOA.  As a result of the transaction and the contract, the HOA claimed that a debt was owing <u>under the contract</u> (though this was false) and referred to this "debt" as "fines."  The contract provided for membership in the HOA, which <u>by definition</u> means the extension of <u>services</u> (groundskeeping, painting, etc.) <u>on credit</u> (monthly dues).  The "fines" were claimed to be due or owing by <u>reason</u> of the transaction <u>wherein services were acquired on credit</u> -- which is synonymous with "membership in the HOA"; such membership obliged observance of all contract terms pertaining to money owed to the HOA, such as the non-existent contract term concerning "fines."

What matters is the "transaction" creating the contract under which the debt is incurred. Federal courts routinely find that the "transaction" in HOA cases in the purchase of the property: *Newman v. Boehm, Pearlstein & Bright*, 119 F.3d 477, 481 (7th Cir. 1997):  The Seventh Circuit held that the "transaction" to which the FDCPA refers was the purchase of the condominium: by paying for and accepting title to their home, the owners "became bound by the [CCRs] of their homeowners association ...."  The <u>obligation</u> to pay the alleged debts arose in connection with the <u>purchase</u> transaction.  *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 115 (2d Cir. 1998):  Noting that under the FDCPA, "debt" is an "obligation ... to pay money arising out of a transaction" that involves "personal, family, or household purposes," the court held that back rent by its nature is an obligation that arises only from the tenant's failure to pay the amounts due <u>under the contractual lease transaction</u>.  *Ladick v. Gemert*, 146 F.3d 1205, 1206-1207 (10th Cir. 1998):  The court held that the obligation to pay a condominium assessment arises in connection <u>with the purchase</u> of the condominium itself.  The plaintiff became obligated upon purchasing his condominium unit to pay any obligation deriving from the governing documents of his HOA.  The debt at issue in this case

---

debt must be "due or owing or alleged to be due or owing ... by reason of a consumer transaction" and ruled that "the late fees and/or penalties at issue here involve a 'credit transaction' .... Although Plaintiff paid for the video at the time of rental, he allegedly acquired the video for a longer period of time than he paid for, ... suggesting that the video was acquired and or retained on credit."

therefore was an obligation arising "out of a transaction."

Here, the transaction created the contract (for services on credit, among other things), and the contract "created" the (fake) fines.

Given the trend toward treating HOA collections as consumer debt under the FDCPA, HOA collections ought to qualify as consumer debt under the Rosenthal Act.

### IV.  Section III.D. of the Motion Is Logic-Free and Should Be Disregarded

Section III.D. of the motion should be disregarded. It argues that defendants' false statements cannot be alleged in a pleading without alleging that at least one of the false statements is true.  Such logic is hard to counter since it is not logic, it is illogic.  Plainly, that "a fine exists" and that "a Nebraska HOA may foreclose based on unpaid fines" are statements that can be false at the same time.  The complaint alleges false statements, which is all it is required to do.

### V.  Section III.G.:  Five Pages in Search of an Authority

In section III.G., defendants argue (for five pages) that plaintiffs filed their earlier complaint "in bad faith."  Not a single case is cited to elucidate the phrase "bad faith."

The argument seems to be that plaintiffs' first complaint was too stripped-down, and that somehow this was "an attempt to conceal [facts] from the court" and a "whitewash."  But a complaint is a simple statement of an alleged cause of action.  It is not -- at the filing stage -- a statement to the court, it is a statement to the defendant.  If the complaint leaves something out <u>necessary to an element of a count</u>, the defendant may move the court to remedy the absence.

Defendants even chastise plaintiffs for failing to attach the CCRs!  But:

> [FRCP] 10(c), which provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," is permissive in nature. A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but <u>a defendant may introduce certain pertinent documents if the plaintiff failed to do so</u>. *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991)[].  Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.
> *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. Ill. 1993) (cited with approval in *Magnetech, Inc. v. Reliance Ins. Co.*, 2000 U.S. Dist. LEXIS 9634 (E.D. Cal. June 14, 2000)) (emphasis added).

In other words, defendants were free to attach <u>both of</u> the demand letters <u>and</u> the CCRs to

their <u>original motion</u> to dismiss the previous version of the complaint.  Given the law, plaintiffs had every right to file a stripped-down pleading with no exhibits, and defendants had every right to move to dismiss -- <u>and</u> attach the exhibits (which they did not do).  No one was attempting to "conceal" anything "from the court."  And how could there be a "whitewash" <u>of information and documents in the defendants' possession</u>?  It is highly <u>improper</u> for plaintiffs to claim that "deliberately concealing" such information "crosses the bounds of propriety of our [sic] shared profession."  That's the sort of thing that gives disingenuousness a bad name.

And what is this sanctimony <u>about</u>?  Neglecting, in the complaint, to explain defendants' <u>motivation</u> for making false statements.  The original complaint stated that the CCRs had no provision for fines of any sort under any circumstances.  That allegation sufficed to plead that the debt did not exist.  By not mentioning <u>the defendants' motivation</u> for charging a non-existent debt (which plaintiffs argue is irrelevant), "we" were not trying to conceal anything from anyone.  Defendants wrote the alleged demand letters; they knew what they had demanded and why.  At the filing stage, nothing can be "concealed" from the court in the complaint since nothing is being "revealed" to the court but rather to the defendants, and deficiencies can be cured by successful demurrer.  Defendants moved the court to dismiss, and plaintiffs were given leave to amend the complaint with more facts.   Section III.G. is five pages that are reducible to only one relevant point:  leave to amend may be denied under certain circumstances.  Those circumstances do not include filing a complaint which, <u>pre-amendment</u>, was too pared down.

### VI. Conclusion

The requirements of a sufficient pleading have been more than met by plaintiffs.  Defendants' motion should be denied; in the alternative, plaintiffs request leave to amend.

Date: August 29, 2014

*/s/ Jim Erickson*
JIM ERICKSON
Attorney for Plaintiffs