UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN MLNARIK, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SMITH, GARDNER, SLUSKY, LAZER, POHREN & ROGERS, LLP, *et al.*,<br><br>　　　　　Defendants. | Case No.   14-cv-01849-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE**<br><br>[Re:  ECF 20] |

　　　　This is a lawsuit brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32 ("Rosenthal Act"), which protect consumers against fraudulent or unfair debt collection practices.  The question before the Court is whether plaintiffs John and Kristen Mlnarik ("Plaintiffs") have sufficiently alleged that certain monetary obligations they allegedly owe to a homeowners' association in Nebraska are consumer "debts" covered by the FDCPA and Rosenthal Act.  This Court previously dismissed Plaintiffs' Second Amended Complaint ("SAC") with leave to amend, concluding that they had not adequately alleged that the offending collection practices were in connection with a "debt," as that term is defined by the FDCPA and Rosenthal Act.  Order, ECF 14.

　　　　Now before the Court is the Motion to Dismiss Fourth Amended Complaint[1] ("FAC") filed by defendants Smith, Gardner, Slusky, Lazer, Pohren & Rogers, LLP ("SGSLPR") and DC

---

[1] The Court observes that it did not give Plaintiffs leave to file Fourth Amended Complaint. However, the "Fourth Amended Complaint" appears to actually be Plaintiffs' corrected Third Amended Complaint, filed shortly after the Third Amended Complaint to "remove and correct the word 'June.'"  *See* FAC at 1 n.1; *see also id.* ¶ 6.  For consistency with the parties' briefing, the Court shall refer to the operative amended pleading as the Fourth Amended Complaint.

Homeowners' Association ("DCHA," collectively with SGSLPR, "Defendants"). Def.'s Mot., ECF 20. Defendants contend that the Fourth Amended Complaint again fails to allege claims under the FDCPA and Rosenthal Act because the allegations make clear that the underlying financial obligation is not a qualifying "debt." Having carefully reviewed the parties' respective written submissions, for the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss with prejudice.

## I.   BACKGROUND

The following facts are taken from the FAC and are assumed to be true. Plaintiffs are residents of Santa Clara County, California and owners of a property in Omaha, Nebraska ("Property"). FAC ¶¶ 1, 8. The Property is part of a homeowners' association—the DCHA. *Id.* ¶ 9. Plaintiffs acquired the Property "in order to live there" but "subsequently pursued opportunities outside of Omaha and thus found other occupants for the Property." *Id.* ¶¶ 10-11.

In a letter postmarked July 30, 2013, Richard Rozgay, the President of defendant DCHA, notified Plaintiffs about DCHA's imminent assessment of fines on the Property for violations of covenants tied to the Property. *Id.* ¶ 17. The letter stated that Plaintiffs were "in direct violation of the Deer Creek Villa II Covenants" for renting out the Property—presumably to a third party— and that the "Deer Creek Board of Directors" had voted unanimously to correct the violation.[2] Plaintiffs were given six months to correct the violation and "until the end of January, 2014 to discontinue renting your home." *Id.* The letter also stated that DCHA would impose fines effective August 1, 2013, with "the initial $200 fine plus $500 for each of the next two weeks thereafter until we reach a $5,000 cap." *Id.* Should Plaintiffs meet the January 31, 2014 deadline to correct the violation, the DCHA would "waive all fees." *Id.* Plaintiffs, however, contest DCHA's authority to impose such fines and assert that "no fine could possibly exist under the terms of the relevant declarations drafted to define the covenants on the Property." *Id.* ¶¶ 20-21.

On or about March 13, 2014, defendant SGSLPR also sent Plaintiffs a letter, erroneously dated August 26, 2010, stating that Plaintiffs' rental of the Property violated Article VII, Section

---

[2] Although not expressly alleged, the Court infers that the "DC" in "DC Homeowners' Association" stands for "Deer Creek."

1, Paragraph A of the restrictive covenants on the Property, which provide that "[n]o house or room rentals or paid boarding shall be allowed under any circumstances." *Id.* ¶ 19.  The letter referenced the July 2013 Rozgay letter, noting that "[w]e attempted to accommodate you to provide a natural termination for your tenants.  You continued to rent the premises." *Id.*  The letter further indicated that "a lien had been filed upon the [P]roperty for fines, lien costs, and interest in the amount of $5,457.25," and SGSLPR would "foreclose the lien unless full payment was made by March 26, 2014." *Id.*  The letter stated that SGSLPR "could perhaps forebear foreclosing the lien, or even charging the fines" if Plaintiffs "could promptly cease . . . violating the Covenants." *Id.*  Plaintiffs allege that no lien was recorded on the Property as of March 20, 2014 and that they believe "no lien may be filed in regard to a debt established by a 'fine'" under Nebraska law. *Id.* ¶¶ 22-23.

Based on the foregoing, Plaintiffs allege that both defendants violated the Rosenthal Act, and that SGSLPR also violated the FDCPA, by falsely claiming "1) that fines were assessable under the relevant covenants; 2) that such fines and other costs had been described as a sum certain in a lien on the [P]roperty; 3) that such a lien had been filed; and 4) that foreclosure procedures could soon be undertaken based upon the lien." *Id.* ¶¶ 29, 33.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003).  Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a motion to dismiss, a complaint must plead sufficient "factual matter, accepted as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The emphasis is on factual pleadings, as a pleading that offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not do. *Id.* (citing and quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  In assessing the sufficiency of the pleadings, the Court "accept[s]

factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court is not required to accept as true allegations that are "unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If a motion to dismiss is granted, a court should normally grant leave to amend "even if no request to amend the pleading was made," unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotations omitted). However, a district court's discretion to deny leave to amend is "particularly broad" where a plaintiff has previously amended. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citing *Sisseton– Wahpeton Sioux Tribe v. United States,* 90 F.3d 351, 355 (9th Cir.1996)).

## III. DISCUSSION

Defendants again seek to dismiss all of Plaintiffs' claims, arguing that they are not legally cognizable because Plaintiffs have failed to demonstrate that Defendants' alleged collection activities were made in connection with a "debt" or "consumer debt" as those terms are respectively defined under the FDCPA and the Rosenthal Act. *See generally*, Def.'s Mot. The Court agrees with Defendants.

### A. FDCPA Claim against SGSLPR

As the Court previously noted, the FDCPA governs debt collection practices targeted at consumers and accordingly defines "debt" as "any obligation or alleged obligation of a consumer to pay money *arising out of a transaction* in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes* . . . ." 15 U.S.C. § 1692a(5) (emphasis added). As both parties are well aware, the FDCPA is "limited in its reach to those obligations to pay arising from consensual transaction, where parties negotiate or contract for consumer related goods or services." *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004); *see* Order 3-4. Plaintiffs were therefore informed that they must allege facts to show that the offending collection practices occurred in connection with an alleged obligation to pay money that falls within the FDCPA's limited reach. Order at 4-5. The amended allegations in

the FAC now make clear that the "fines" at issue—imposed for violating restrictive use covenants on one's real property—are not consumer "debts" within the ambit of the FDCPA because they did not arise out of a consensual transaction involving "money, property, insurance, or services" acquired "primarily for personal, family, or household purposes."

The Court begins with the undisputed premise that the appropriate point in time for determining the character of a financial obligation is when the obligation arose. *Haddad v. Alexander, Zelmanksi, Danner & Fioritto, PLLC*, 698 F.3d 290, 294 (6th Cir. 2012); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 874 (7th Cir. 2000) (citing *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068–69 (9th Cir. 1992) for the proposition that "the relevant time is when the loan is made, not when collection is attempted"); *see* Pl.'s Opp. 5-7; Def.'s Reply 6, ECF 25. In other words, the Court must identify the "transaction" out of which the financial obligation arose and determine whether that transaction was for a consumer purpose. *Haddad*, 214 F.3d at 294.

Plaintiffs argue that "the purpose at the time of acquisition controls," apparently suggesting that the obligation to pay fines arose out of Plaintiffs' acquisition of the Property, which was "for personal, family or household purposes." Pl.'s Opp. 5-7; *see also* FAC ¶ 31. Plaintiffs' argument appears to be that because the fines were imposed due to their breach of covenants to which they agreed when they purchased the Property, the fines must necessarily "arise" out of the home purchase transaction. Because it is undisputed that Plaintiffs *purchased* the Property as a home, the fines at issue here must therefore be like the homeowners' association assessments that courts have found to be qualified consumer "debts" under the FDCPA. Pl.'s Opp. 5-7 (citing *Haddad*, 698 F.3d at 293-94). Defendants, in turn, contend that the relevant time is on or after August 1, 2013, and that the "transaction," if one could call it that, is the imposition of the disputed fines. Def.'s Reply 6. The Court agrees with Defendants.

It appears from the allegations in the FAC that Plaintiffs rented the Property to others in violation of restrictive covenants on the Property and, as a result, DCHA imposed an allegedly unauthorized fine. FAC ¶¶ 17, 19. Thus, the fines arose from Plaintiffs' *breach* of the restrictive covenants, and not from their agreement to abide by the covenants at the time they purchased the

5

Property. Defendants do not dispute (nor does this Court) the contention that an ongoing obligation to pay assessments to a homeowners' association is a consumer "debt" under the FDCPA because the promise to pay occurs when the homeowner purchases the property and therefore "arises" out of the consumer real estate transaction. *See* Def.'s Reply 5; *Haddad*, 698 F.3d at 293; *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481-82 (7th Cir. 1997) (homeowners became bound to pay assessments by paying for and accepting title to home, and therefore assessments arose out of the purchase transaction). Nothing in this case suggests that Defendants' collection efforts pertained to homeowners' association assessments. To the contrary, while Plaintiffs did enter into certain contractual obligations when they purchased the Property, the relevant promise that arose from that purchase transaction is not an obligation to pay fines (in fact, Plaintiffs contest this very obligation), but rather an obligation to not rent the Property. When Plaintiffs breached that obligation, DCHA imposed fines. Whether or not such fines were authorized, the alleged financial obligation at issue in this lawsuit did not arise out of Plaintiffs' purchase of the Property, and instead came about because of Plaintiffs' subsequent breach of other obligations they made when they purchased the Property.

Defining the relevant transaction as such, it is furthermore clear that the fines do not arise out of a "*consensual* transaction, where parties negotiate or contract for consumer related goods or services." *Turner*, 362 F.3d at 1227 (emphasis added). The "transaction" (if one could call it that) out of which the fines arose was not the purchase of the Property, but Plaintiffs' rental of the Property in violation of restrictive covenants and DCHA's imposition of fines for that violation. There is nothing consensual about either Plaintiffs' violation (to which the HOA did not consent), or the imposition of fines for that violation (to which Plaintiffs did not consent). In fact, Plaintiffs' own allegation that the fines are "arbitrary, invented, and contractually unauthorized," FAC ¶ 19, indicates that the fines are not a "consensual obligation or business dealing" but a unilateral penalty specially imposed for renting the Property in violation of the applicable covenants, for which no claim can arise under the FDCPA. *See Durso v. Summer Brook Pres. Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1265 (M.D. Fla. 2008); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370-72 (11th Cir. 1998).

6

The nature of the transaction is the line that the *Durso* court drew when it analogized fines for breaking house rules to tort awards. *Durso*, 641 F. Supp. 2d at 1265. Plaintiffs make much of the distinction between tort and contract claims, arguing vociferously that tort claims may be "debts" subject to the FDCPA. Pl.'s Opp. 2-5. The Court does not disagree with this notion. However, Plaintiffs miss the point of the *Durso* court's reasoning, with which this Court agrees: fines imposed for violations of house rules or restrictive covenants are "not the result of a business dealing or an obligation to pay for goods or services." *Durso*, 641 F. Supp. 2d at 1265. Such nonconsensual coercive sanctions are *more akin* to tort awards than they are to regular assessments to which a homeowner agrees as part of his or her purchase of real property.[3] They are therefore not a type of money obligation contemplated within the FDCPA's definition of consumer "debt."

Because the relevant point in time is when the fines began accruing, it is furthermore irrelevant to the statute's applicability how Plaintiffs used the Property before the fines were imposed and how they plan to use the Property in the future.[4] At the time that the fines began accruing, Plaintiffs were renting the Property. *See* FAC ¶ 17. Though not alleged, the Court infers that the tenant was not a family member. By virtue of the fines arising out of Plaintiffs' violation of a covenant against renting the Property to others, Plaintiffs have failed to allege that the financial obligation Defendants sought to collect arose out of a transaction in which "money, property, insurance, or services" were transacted "primarily for personal, family, or household purposes."[5] 15 U.S.C. § 1692a(5).

---

[3] In any event, as Defendants note, characterizing the fines as creatures of contract avails Plaintiffs little, because Plaintiffs' principal complaint is that the imposition of fines is *not* authorized by the applicable covenants. Def.'s Reply 2-5.

[4] Plaintiffs allege that they were born and raised in Nebraska, and that their parents and other family lived nearby at the time of the purchase, and that they may eventually choose to live full-time in the Property. FAC ¶¶ 10-12.

[5] Plaintiffs argue that "a home bought in order to rent to strangers is for personal use if the rent money will be used for personal purpose," relying on *Koga v. E. Sav. Bank, FSB*, No. CIV. 11-00123 DKW, 2013 WL 4482426 (D. Haw. Aug. 19, 2013) for that proposition. Pl.'s Opp. 6 (emphasis and punctuation omitted). *Koga* concerned whether a loan transaction was undertaken for consumer purposes under the Truth in Lending Act. The court found, on summary judgment, that the loan at issue was for consumer purposes because there was "no dispute that [Plaintiff] told [Defendant] that the purpose of the loan was to 'us[e] the proceeds to purchase a condo for her and her daughter . . . to live in.'" *Koga*, 2013 WL 4482426, at *3. Further, it appears that the *Koga*

7

Plaintiffs alternatively argue—without citing any case authority—that because DCHA did not have authority to impose fines under the relevant covenants, it is a violation of 15 U.S.C. § 1692f(1) to collect on such fines because they are not "expressly authorized by the agreement creating the debt" or "legally added." Pl.'s Opp. 2, ECF 21. Plaintiffs' argument misconstrues § 1692f(1) and misses the mark. Section 1692f does not define what qualifies as a "debt" under the FDCPA but rather proscribes debt collector conduct: a debt collector may not use "unfair and unconscionable means" to collect "any amount (including any interest, fee, charge, or expense *incidental to the principal obligation*) unless such amount is expressly authorized by the agreement creating the *debt* or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added). Section 1692f(1) thus presupposes a qualifying consumer debt on top of which a debt collector may not add unauthorized fees or charges. The allegations in the FAC establish that the fines at issue here are not "incidental" to some underlying principal monetary obligation, nor do they directly stem from some underlying agreement in which Plaintiffs agreed to pay money. Rather, the fines were imposed due to Plaintiffs' breach of a restrictive covenant on the manner in which they could use the Property. FAC ¶¶ 17, 19. Thus, Defendants' authority to impose fines for violating those covenants is of no consequence to whether those fines are consumer "debts."[6]

Because the allegations in the FAC indicate that the underlying fines Defendants attempted to collect do not arise from a consensual transaction wherein the "money, property, insurance, or services" that are the subject of the transaction are "primarily for personal, family, or household purposes," 15 U.S.C. § 1692a(5), nor are they unauthorized fees incidental to some other financial obligation that meets the definition of "debt" under the FDCPA, *id.* § 1692f(1), Plaintiffs have

---

plaintiff obtained a loan secured by property that she already owned but intended to rent, not a loan for the purpose of purchasing property that she intended to rent. *See id.* at *1. Either way, *Koga* is inapposite because the monetary obligation here is not an unpaid loan that was incurred in order to purchase the Property, nor even an unpaid loan secured by the Property and obtained for consumer purposes, but rather fines incurred as a result of Plaintiffs' violation of restrictive covenants against renting the Property. Thus, whatever use Plaintiffs intended to make of the rental income they received from the Property is irrelevant to how the fines arose, and Plaintiffs proposed amendment would do little to cure their legally deficient claim. Pl.'s Opp. 6 n.4.

[6] While Plaintiffs may have a valid state law claim to challenge DCHA's authority to impose fines for Plaintiffs' violation of the restrictive covenants, that claim is not raised here, nor would it be the proper subject of a lawsuit in this forum.

1  failed to allege a legally cognizable claim for collection activities in violation of the FDCPA.
2  Defendants' Motion to Dismiss is therefore GRANTED as to Plaintiffs' FDCPA claim against
3  SGSLPR.

        **B.**    **Rosenthal Claim Against Both Defendants[7]**

Under the Rosenthal Act, Plaintiffs must plead facts demonstrating that Defendants were collecting or attempted to collect a consumer debt, *i.e.*, "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(a), (f). A consumer credit transaction, in turn, is "a transaction between a natural person and another person in which property, services or money is acquired *on credit* by that natural person from such other person primarily for personal, family, or household purposes." *Id.* § 1788.2(e) (emphasis added).

Plaintiffs argue that "[g]iven the trend toward treating HOA collections as consumer debt under the FDCPA, HOA collections ought to qualify as consumer debt under the Rosenthal Act." Pl.'s Opp. 9. As discussed above, the fines alleged in the FAC are not "debts" within the protection of the FDCPA. Therefore, Plaintiffs' Rosenthal Act claims fail as well. Moreover, as the Court noted in its prior order, Plaintiffs in their previous complaint did not allege the acquisition of services "on credit" from DCHA sufficient to satisfy the Rosenthal Act, and that has not changed in the FAC. *See* Order at 7-8. As such, Plaintiffs have failed to allege facts indicating that the subject fines arose from a transaction wherein they "acquire[d] something without paying for it." *Gouskos v. Aptos Village Garage, Inc.*, 94 Cal. App. 4th 754, 759 (2001). Plaintiffs have thus failed to state a legally cognizable claim under the Rosenthal Act, and Defendants' Motion to Dismiss is GRANTED as to that claim.

---

[7] Having disposed of Plaintiffs' federal claim, the Court has the discretion to decline to exercise supplemental jurisdiction over Plaintiffs' state law claim. 28 U.S.C. § 1367(c)(3). Because both Plaintiffs' FDCPA and Rosenthal Act claims rest on the same set of underlying facts and similar statutory language, however, the generally accepted principles of "economy, convenience, fairness, and comity" would be ill-served by declining to exercise supplemental jurisdiction over the Rosenthal Act claim. *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) *supplemented, as amended* (Oct. 1, 1997) 121 F.3d 714 (9th Cir. 1997). As such, the Court retains jurisdiction over the Rosenthal Act claim and proceeds to the merits of the parties' arguments.

## IV. LEAVE TO AMEND

Generally, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130. In addition to futility, courts also consider factors such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party in determining whether to grant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although Plaintiffs have not expressly requested leave to amend, they have begrudgingly offered potential amendments "if necessary." Pl.'s Opp. 6 n.4. Because this Court concludes that the claims, as alleged in the FAC, are not legally cognizable, and nothing suggested by Plaintiffs would cure the deficiencies, further amendment would be futile, particularly given Plaintiffs' failure to remedy the deficiencies in their complaint through previous amendments. Defendants' Motion to Dismiss is accordingly GRANTED with prejudice.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss the Fourth Amendment Complaint is GRANTED with prejudice.

**IT IS SO ORDERED.**

Dated: November 21, 2014

BETH LABSON FREEMAN
United States District Judge